SISTERS OF CHARITY OF SAINT ELIZABETH, PROSECU-
TOR, v. MORRIS RAILROAD COMPANY.

FLORENCE ADELE VANDERBILT TOWMBLY, PROSECU-
TRIX, v. MORRIS RAILROAD COMPANY.

Argued November 9, 1911—Decided December 13, 1911.

1. While *quo warranto* is the proper proceeding by which to challenge the legality of corporate existence or the *de jure* right to exercise corporate powers, *certiorari* is the appropriate writ by which a corporation, when acting as a state agency, may be kept within the bounds of the authority conferred upon it, the transgression of which will result in a direct invasion of the private property of the prosecutor.

2. The appointment of commissioners to condemn the lands of the prosecutors at the instance of a railroad company incorporated under the General Railroad act, having been removed into this court by *certiorari*, the prosecutors filed certain reasons under which they propose to challenge the right of the defendant to use its power of condemnation to take the lands of the prosecutors for the purpose of allowing a trolley company to construct its line thereon. *Held*, that a motion to strike out these reasons should be denied.

On *certiorari*.

Before Justices GARRISON, TRENCHARD and KALISCH.

For the prosecutors, *McCarter & English* and *Lindabury, Depue & Faulks.*

For the defendant, *Alan H. Strong.*

The opinion of the court was delivered by

GARRISON, J. This is a motion by the defendant in *certiorari* to strike out certain reasons filed by the prosecutors. The *certiorari* was allowed by the Supreme Court justice who had appointed commissioners to condemn the lands of the prosecutors in proceedings instituted by the defendant, a railroad company incorporated under the General Railroad act. The lands sought to be taken by condemnation by the defendant lie between the two points to which the tracks of a trolley company have been laid, and one of the claims of the prosecutors is that the powers of condemnation granted to the defendant for the construction of a steam railroad are being used by it to secure lands for the construction of the road of a trolley company which this latter company cannot lawfully take by condemnation because it has not complied with the act under which it is incorporated by obtaining the consent of the municipality through which it is seeking to construct its road. Such use of the power of condemnation granted for one purpose to eke out a lack of power for which it was not granted is characterized by the prosecutors in their reasons as a fraud upon each of the statutes involved, and to this question the testimony of the prosecutors was addressed in the examination of witnesses under the rule obtained for that purpose. In the course of the taking of such testimony certain witnesses connected with both the steam railroad and the trolley company refused, under the advice of counsel, to answer questions tending to sustain this contention of the prosecutors. Thereupon a motion was made before us to compel the witnesses to answer or to attach them for contempt. Upon this motion the position taken by the counsel of the defendant was that the questions were directed at the corporate existence of the defendant

which could not be attacked by *certiorari,* but only upon *quo warranto,* the position of counsel for the prosecutors being that he had a right to adduce lawful testimony in support of his reasons. The difficulty of deciding the meritorious question in a punitive proceeding against a witness led to the withdrawal by the defendant of its motion, and the substitution therefor of the motion now before us which is to strike out the reasons themselves upon the ground that the testimony taken to support them can present only questions that cannot be decided upon *certiorari.*

The merits of the defendant's motion having been argued without objection by the prosecutors as to the propriety of the motion itself, the latter will be assumed for the purpose of deciding the former. It must also, by a familiar rule, be assumed upon such motion that the prosecutors will be able to prove those facts the right to prove which is challenged.

It is fully conceded by the counsel of the prosecutors that *certiorari* is not the proper remedy by which to attack or inquire into the legality of the corporate existence of the defendant, and also that as to persons dealing with or proceeding against a corporation it is enough that it *may* be *de jure* and is a *de facto* corporation. This concedes the main point taken by the defendant's counsel, and if such point were dispositive of the rights involved would end the matter in favor of the defendant's contention.

There remains, however, over and above all that is covered by this concession, the case of a prosecutor in *certiorari,* such as the present, who is not dealing with a corporation or seeking to proceed against it, who does not need to dispute its corporate existence or to attack the legality thereof or seek to have it destroyed, but, who, being a landowner, claims the right to keep his land until it is taken from him by the lawful exercise of the state's right of eminent domain. To such a prosecutor the corporate existence of the defendant is a matter of entire indifference, as also is its authority to exercise lawfully the state's right of eminent domain, the sole contention necessary for the protection of his property being that such right shall not be unlawfully exercised beyond the limits for which it was

granted or be fraudulently diverted from the legitimate uses for which it was granted to a use for which it was not lent by the state to the defendant. This contention appeals not to the law by which corporate existence is determined, but rather to those doctrines by which the law of agency is defined and applied.

The right of eminent domain is a sovereign power, and it is elemental law that its exercise by a corporation under legislative sanction constitutes such corporation the state's agent for the exercise of such sovereign power for the purposes for which such agent was authorized to use it, and for no other purpose. Whenever, therefore, such agent seeks to employ the sovereign right thus granted to it for a purpose other than that for which it was granted, it is acting outside of its agency and in excess of its authority, and for such acts, when they constitute an invasion of private property, the mere fact of incorporation affords no valid support.

Such acts constitute both a public and a private injury; for the public wrong the remedy is the forfeiture of corporate existence at the suit of the attorney-general, but for the private injury the remedy goes no further than to keep the corporation within the bounds of its lawful authority, which is the peculiar and indeed the original function of the writ of *certiorari.*

That the remedy of the state and of the individual stand on totally different grounds and are not mutually exclusive appears from the consideration that if upon *quo warranto* this court should deny the public redress sought by the attorney-general, the landowner would be in precisely the same situation after such *quo warranto* as he was before with respect to the right to insist that the agent of the state be kept within the bounds of the authority granted to it by the state, and that his lands be not taken from him *in invitum* by the exercise of an authority which, being in excess of what was granted, was, in legal effect, non-existent.

That this is upon general principles a proper use of the writ of *certiorari* does not admit of serious doubt. Numerous de-

cisions illustrating such use of this writ establish the principle upon which its use in the present case is justified. *Doughty* v. *S. & E. R. R. Co.,* 1 *Zab.* 442; *Morris and Essex Railroad Co.* v. *Central Railroad Co.,* 2 *Vroom* 205; *Hoboken Land and Improvement Co.* v. *Hoboken,* 6 *Id.* 205; *Morris and Essex Railroad Co.* v. *Hudson Tunnel Co.,* 9 *Id.* 548; *Richards* v. *Dover,* 32 *Id.* 400; *Hampton* v. *Clinton Water Co.,* 36 *Id.* 158; *Philadelphia and Camden Ferry Co.* v. *Inter-City Railroad Co.,* 44 *Id.* 86; *Shamberg* v. *New Jersey Shore Line Railroad Co., Id.* 572.

In *Essen* v. *Secretary of State,* 43 *Vroom* 432, it was held that the mere filing of a *location* could not be reached by *certiorari,* but that an ordinance based thereon would invoke the function of such writ.

A somewhat similar use of the writ of *certiorari* is illustrated by Austin *v.* Atlantic City, where a deed by which one thousand four hundred and sixty grantees were constituted freeholders was denied validity to qualify such tenants in common as recommenders for liquor licenses upon the ground of the fraudulent use of an otherwise valid legal title.

The case of *National Docks Railroad Co.* v. *Central Railroad Co.,* 5 *Stew. Eq.* 755, upon which counsel for the defendant mainly relies, arose in and was decided by the court of equity under conditions so widely. different from those now *sub judice* that its citation is hardly relevant. In that case the Court of Chancery was asked to deny corporate power to an incorporated company, and as this, in effect, determined the corporate existence, the Court of Errors and Appeals very properly held that it could not be decreed in a suit *inter partes.* The difference between a denial of corporate power and a claim that such power shall be lawfully exercised would seem to be too plain for elaboration.

The conclusion to which we have come is that while the legality of corporate existence may not be challenged upon *certiorari,* the exercise of the right of eminent domain in excess of that granted by the state may be challenged and kept within legal bounds by such writ at the instance of a land-

owner to whom it has been allowed, and that for the purpose of making out such a case the reasons filed by the prosecutors will be allowed to stand.

The defendant takes nothing by its motion.